# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BAYER CORPORATION** ) | |
| **AND SUBSIDIARIES,** ) | |
| ) | |
| Plaintiff and ) | |
| Counterclaim Defendant, ) | |
| ) | **CIVIL ACTION NO. 09-351** |
| ) | |
| vs. ) | |
| ) | |
| **THE UNITED STATES,** ) | |
| ) | |
| Defendant and ) | |
| Counterclaim Plaintiff. ) | |
| ) | |
| | |
| **BAYER-ONYX, a partnership, by** ) | |
| **BAYER HEALTHCARE LLC,** ) | |
| its tax matter partner, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | **CIVIL ACTION NO. 08-693** |
| ) | |
| vs. ) | |
| ) | |
| **THE UNITED STATES,** ) | |
| ) | |
| Defendant. ) | |

## REPLY MEMORANDUM IN SUPPORT OF BAYER'S
## MOTION FOR ENTRY OF A PROTECTIVE ORDER

In their Motion for the Entry of a Protective Order and accompanying Memorandum, the Plaintiffs, Bayer Corp. and its subsidiaries and Bayer-Onyx (collectively "Bayer") demonstrated that good cause exists for this Court to enter an appropriate protective order to safeguard Bayer's most confidential and proprietary research work, including its trade secrets ("Bayer's Confidential Information"), and the personal financial information, such as salaries and Social Security Numbers, of many of Bayer's employees ("Personal Financial Information").

The Defendant's Opposition is mistaken as to both the facts and the law relevant to Bayer's Motion. First, the Defendant mischaracterizes the relief sought by Bayer. Contrary to the Defendant's arguments, the Proposed Protective Order that Bayer has submitted to the Court (Exhibit A)[1] explicitly states that Bayer will bear the burden of demonstrating that any particular documents are entitled to protection *after* those documents are produced. Thus, the Defendant's contention that Bayer has failed to provide sufficient evidence for the protection of its confidential records at this time is entirely premature and misplaced. Moreover, the Defendant's contention that Bayer has refused to proceed with discovery is easily refuted by the fact that Bayer has already answered more than 75 discrete interrogatories and produced more than 30,000 pages of documents to the Defendant in response to the Defendant's many requests.

The Defendant is also mistaken in arguing that this Court has no authority to resolve issues of federal law regarding the Defendant's potential disclosure of Bayer's Confidential Information and Personal Financial Information. It is the function of this Court, and not the Defendant alone, to determine the extent to which federal law authorizes such disclosures.

At this point, the differences between the parties' Proposed Protective Orders is limited to a single issue: whether or not this Court will have any oversight authority over how and when the Defendant will be able to disclose Bayer's Confidential Information. Exhibit A reflects Bayer's Proposed Protective Order, while Exhibit B reflects the Defendant's position.[2] Only Bayer's proposal (Exhibit A) provides a procedure for this Court to resolve issues of federal law

---

[1]     In response to the new language proposed by the Defendant in its Opposition, Bayer has revised the Proposed Protective Order attached as Exhibit A to more closely reflect the Defendant's language. Bayer would respectfully request this Court to enter the Proposed Protective Order attached hereto as Exhibit A, rather than the prior order submitted with Bayer's opening brief.

[2]     Counsel for the Defendant has confirmed that Exhibit B reflects the Defendant's Proposed Protective Order.

regarding the circumstances under which the Defendant may disclose Bayer's Confidential Information and Personal Financial Information.  Even so, Bayer's Proposed Protective Order specifically exempts from even this limited oversight process any particularly problematic circumstances that the Defendant has identified (where the documents reasonably indicate a violation or potential violation of criminal law or a risk to national security or public health or safety).

Because Bayer's Proposed Protective Order provides the Defendant with complete flexibility to share Bayer's Confidential Information in those problematic circumstances identified by the Defendant, while still providing this Court with limited oversight to resolve issues of federal law in other situations where there is no such urgency, the Court should grant Bayer's Motion For Protective Order and enter the Order attached hereto as Exhibit A.

I. ARGUMENT

    A. **The Relief Sought By Bayer Is Reasonable And Limited In Scope.**

Contrary to the Defendant's contention that Bayer is seeking "sweeping relief," Bayer's Proposed Protective Order (Exhibit A) is actually quite modest.  For example, under Bayer's Proposed Protective Order, Bayer would remain obligated to:  1) review and mark individual documents to which it is claiming protection; 2) respond to any objections raised by the Defendant regarding Bayer' confidential designations; and 3) bear the burden of establishing the need for the confidential status of all such documents in any disputes that are brought before the Court.

To the extent that the Defendant has identified any particular circumstances that present a reasonable need for secrecy or urgent action, Bayer's Proposed Protective Order specifically

provides the Defendant with the right to forgo this Court's oversight before making disclosures to other federal agencies:

> Notwithstanding any other provisions of this Order, Counsel for the United States may disclose Confidential Information to other federal agencies or departments, which would also be bound by this Order, if Counsel for the United States reasonably believes that Confidential Information, either on its face or in conjunction with other information, **indicates a violation or potential violation of criminal law or a risk to national security or public health or safety**.

Exhibit A, Paragraph 20.[3]

Where, however, there is no suggestion of any particular urgency or need for secrecy, Bayer's Proposed Protective Order merely provides that Bayer may ask this Court for an opportunity to consider the propriety of the Defendant's proposed disclosure of Bayer's Confidential Information and its employees' Personal Financial Information under federal law.

> Further, if Counsel for the United States reasonably believes that Confidential Information, either on its face or in conjunction with other information, indicates a violation or potential violation of civil or regulatory law, it shall notify Bayer at least fourteen (14) days before making any disclosure of Confidential Information to other federal agencies or departments, which would also be bound by this Order, to allow Bayer to seek appropriate safeguards.

*Id.* Even in those limited circumstances where the Defendant has been unable to identify an urgent need to disclose Bayer's Confidential Information, the Defendant would still have the right to disclose the information if it could persuade this Court that disclosure was appropriate under federal law.

---

[3] Despite the fact that the Defendant insisted to Bayer for more than two months that it could not possibly describe the many circumstances that would authorize it to disclose Bayer's Confidential Information and Personal Financial Information, the entirely new language proposed in the Defendant's Opposition does exactly that.

The Defendant's Opposition attempts to make much of the fact that Bayer sued the Defendant to recover taxes that Bayer believes that it overpaid. Putting aside the inadequate consideration that Bayer believes that it received from the Internal Revenue Service, there is no basis for the Defendant's argument that a taxpayer such as Bayer should be required put its intellectual property rights, such as trade secrets, at risk in order to avail itself of the research credit enacted by Congress to stimulate domestic research. Indeed, such a ruling would only serve to dissuade taxpayers from pursuing the lawful rights granted to them by Congress.

Likewise, the Defendant's argument that because Bayer produces and sells a variety of medications there is a "public interest" in the disclosure of its trade secrets is baseless. As a major manufacturer of pharmaceuticals, Bayer is already subject to all of the same disclosure requirements that its competitors face. The mere fact that Bayer is involved in litigation with the Defendant, unrelated in any way to the quality of its pharmaceutical products, is no basis to force Bayer to put its trade secrets at risk. Moreover, the Defendant does not even try to argue that there is a public interest in disclosing the vast amounts of Personal Financial Information belonging to Bayer's employees that will be implicated in this case.[4]

### B. Only This Court, And Not The Defendant, Has The Authority To Decide Issues Of Federal Law.

Perhaps the most surprising aspect of the Defendant's Opposition is that it calls into question this Court's authority to interpret federal law. The Defendant asserts that it alone has the authority, unbounded by any oversight by this Court, to determine whether disclosure of

---

[4] The disclosure of Social Security Numbers, for example, could subject Bayer employees to an increased risk of identity theft, as demonstrated by the recent losses of laptops by the IRS and Veterans Administration. Lost IRS Laptop Stored Employee Fingerprints, http://www.msnbc.msn.com/id/13152636/.

Bayer's Confidential Information and Personal Financial Information is permitted under federal law.

It is "emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Similarly, determining whether another branch of government has exceeded its legal authority is solely the province of the judiciary. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co. and United States*, 458 U.S. 50 (1982) ("The Federal Judiciary was therefore designed by the Framers to stand independent of the Executive and Legislature-to maintain the checks and balances of the constitutional structure, and also to guarantee that the process of adjudication itself remained impartial").

In this instance, Bayer is merely requesting that this Court be given the opportunity to determine, in a limited set of circumstances, whether federal law authorizes the disclosure of Bayer's Confidential Information and Personal Financial Information. Only this Court can make such a determination.

Contrary to the Defendant's assertion, the Tenth Circuit in *SEC v. Merrill Scott & Associates, LTD*, 2010 WL 1039796 (10th Cir., March 23, 2010) *did* hold that courts have the authority to place limitations on the federal government's ability to disclose confidential information to other government agencies. In *Merrill*, the Tenth Circuit limited the SEC's ability to disclose such information because it had previously agreed to such limitations in a protective order issued by the court. According to the Defendant here, it was only because the taxpayer in *Merrill* had relied on the SEC's promise not to disclose the information that the Tenth Circuit had the authority to uphold the limitation on disclosure. Defendant's Opposition at 7. In essence, the Defendant is arguing that federal courts have the authority to decide issues of

estoppel, but not to interpret federal regulations and statutes, related to the disclosure of a taxpayer's confidential information. There is simply no basis for such a distinction.

## II. CONCLUSION

Bayer's Proposed Protective Order (Exhibit A) strikes an appropriate balance between protecting Bayer's most confidential and valuable records and the meeting the government's articulated need to disclose information to other government agencies in appropriate circumstances. The limited oversight granted to this Court in Bayer's Proposed Protective Order is in keeping with this Court's absolute authority to decide issues of federal law. As such, Bayer's Proposed Protective Order should be entered because it satisfies the requirement of good cause, is not inimical to the public interest, and is essential to the legitimate business and privacy concerns of Bayer and its employees.

Respectfully Submitted,

*Counsel for Plaintiff*

/s/ John M. McIntyre
John M. McIntyre
PA I.D. No. 78739
Reed Smith LLP
Alexandria C. Samuel
PA I.D. No 207087
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone: (412) 288-3822
Facsimile: (412) 288-3063
jmcintyre@reedmith.com
asamuel@reedsmith.com


Clifton B. Cates
Jeffrey B. Moeller
Ivins, Phillips & Barker Chartered
1700 Pennsylvania Ave., N.W.
6th Floor

          Washington, D.C. 20006
          Telephone:  (202) 393-7600
          ccates@ipbtax.com
          jmoeller@ipbtax.com

- 9 -

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served through the Court's electronic transmission facilities this 15th day of June 2010 upon the following counsel of record:

>Jan M. Geht
>John J. LoCurto
>Yonatan Gelblum
>Tax Division
>U. S. Department of Justice
>Post Office Box 227
>Washington, DC  20044
>
>Jennifer R. Andrade
>United States Attorney's Office
>700 Grant Street, Suite 4000
>Pittsburgh, PA 15219

>/s/ John M. McIntyre
>Counsel for Plaintiffs