IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BAYER CORPORATION AND SUBSIDIARIES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 09-351 (consolidated with Civil |
| UNITED STATES, | ) ) | Action No. 08-693 for discovery) |
| Defendant. | ) | |

## MEMORANDUM

**INTRODUCTION**

In this civil action, Bayer Corporation and Subsidiaries ("Bayer") seek a refund of federal income taxes arising out of the complete or partial denial by the Internal Revenue Service ("IRS") of credits for qualified research expenses ("QREs") claimed by Bayer for the years 1990-2006 inclusive.  Before the Court is the United States' motion for partial summary judgment pursuant to Fed.R.Civ.P. 56.[1]  For the reasons set forth below, the motion will be denied.

---

[1] In response to Bayer's complaint, the Government has asserted a counterclaim against Bayer for federal income taxes for the year 2006, together with accrued interest.  The Government's summary judgment motion is limited to Bayer's refund claim.  The Government does not seek judgment as a matter of law on its counterclaim.  (Docket No. 93, p. 2 fn.1).

## SUMMARY OF UNDISPUTED FACTS

For purposes of the present motion, the following facts are undisputed:[2]

A federal income tax credit for QREs was established by the Economic Recovery Tax Act of 1981 and is set forth in Section 41 of the Internal Revenue Code.  26 U.S.C. § 41.  Under Section 41(d), "qualified research" means research "which is undertaken for the purpose of discovering information - (i) which is technological in nature, and (ii) the application of which is intended to be useful in the development of a new or improved business component of the taxpayer, ...," and the term "business component" means "any product, process, computer software, technique, formula, or invention which is to be - (i) held for sale, lease, or license, or (ii) used by the taxpayer in a trade or business of the taxpayer."  26 U.S.C. § 41(d)(1).  The test for determining whether an expense was incurred in connection with qualified research is to be applied separately to each business component of the taxpayer.  26 U.S.C. § 41(d)(2)(A).

Bayer is comprised of healthcare, material science and crop science divisions.  It engages in research activities at

---

[2] Some of the undisputed facts included in the Court's summary are derived from a Declaration of Paul F. Wright, Bayer's former Vice President of Tax.  The Declaration was submitted by Bayer in support of its opposition to the Government's motion for partial summary judgment.  (Docket No. 108-1). Contrary to the Government's contention that Mr. Wright's Declaration is unsworn, and, impliedly, deficient (Docket No. 111, p. 13), Mr. Wright made the Declaration in accordance with 28 U.S.C. § 1746 which permits unsworn declarations under "penalty of perjury."

numerous sites throughout the United States.  Bayer does not
account for research expenses on a project-by-project basis.
Rather, Bayer uses a "cost center" accounting system that is
based on the nature of activities performed.  Specifically,
similar activities are grouped into cost centers and individual
expenses, such as payroll, supplies and outside services, are
charged to the appropriate cost center and then to specific
expenses classes within those cost centers.

From 1983 until his retirement on May 31, 2012, Paul F.
Wright was employed as Bayer's Vice President of Tax.  Among
other things, Mr. Wright was responsible for preparing,
approving and filing Bayer's tax returns.[3]  (Docket No. 108-1,
¶ 1).  In 1997, at Mr. Wright's request, Bayer retained the
accounting firm of Deloitte & Touche LLP to conduct a study to
determine whether Bayer had claimed all of the QRE credits to
which it was entitled under 26 U.S.C. § 41 on its tax returns
for the years 1990-1997 ("the Deloitte Study").  (Docket No.
108-1, ¶ 10, Docket No. 109, ¶ 1).

During the Deloitte Study, which was performed in 1997 and
1998, activities in hundreds of Bayer's cost centers in research
sites throughout the United States were examined to determine
whether those activities met the statutory requirements of

---

[3] Mr. Wright has been retained by Bayer on an hourly basis to oversee this
litigation.  (Docket No. 108-1, ¶ 2).

qualified research set forth in 26 U.S.C. § 41(d) and which
costs associated with qualified research were QREs under 26
U.S.C. § 41(b).[4]  As part of the Deloitte Study, Bayer and its
advisors visited 23 of Bayer's 49 research sites in the United
States, met with local cost accounting personnel to review
specific cost accounting policies and procedures, and conducted
interviews of key employees who had personal knowledge of the
activities in each of the cost centers examined.   (Docket No.
108-1, ¶ 11, Docket No. 109, ¶ 2).

     The report of the Deloitte Study, which when completed
filled 60 large 3-ring binders, was a comprehensive written
analysis and explanation of Bayer's claim for additional QRE
credits for the years 1990-1997.   The following items were
included in the report of the Deloitte Study: (a) a summary of
QREs by cost center and year; (b) cost detail by expense class
for each cost center; (c) a schedule of qualified percentages by
cost center for each year and the base period years;[5] (d)
descriptions of the activities performed by departments (groups
of functionally related cost centers); (e) descriptions of the
products to which these activities and related costs pertained;
(f) contemporaneous supporting documentation; (g) summaries of

---

[4] The credit for QREs is limited to salaries and wages, supplies and contract
research performed by third parties.  26 U.S.C. § 41(b).
[5] In general, the credit for QREs for any taxable year is 20% of the excess
QREs for the taxable year over a specified base period.  26 U.S.C. § 41(a).
The base period for computing Bayer's QRE credits in the present case
includes the years 1984-1988.

4

the applicable law; (h) explanations of how the law, as related

to the facts, supported Bayer's claim for additional QRE

credits; (i) schedules showing the additional QREs claimed by

Bayer; and (j) detailed computations of the additional QRE

credits to which Bayer claimed entitlement.  (Docket No. 108-1,

¶ 12, Docket No. 109, ¶ 4).

In June 1998, Bayer delivered a draft of a portion of the

Deloitte Study report (dealing with only one research site) to

the IRS for review and comments on its sufficiency for purposes

of auditing Bayer's claim for additional QRE credits.[6]  In

particular, Bayer requested comments on information formatting,

study methodology and the types of information collected to

enable Bayer and its advisors to make any necessary changes

prior to submission of the final report to the IRS.  (Docket No.

108-1, ¶ 13).

In meetings with Bayer which followed the IRS's review of

the draft portion of the Deloitte Study report, the IRS asked

numerous substantive questions about the methodology employed

and the legal positions taken by Bayer.  While the IRS requested

certain changes in the organization and formatting of the

information presented in the report of the Deloitte Study, the

IRS did not object to the methodology utilized and it did not

---

[6] The lengthy report of the Deloitte Study was delivered to the IRS by Bayer in installments.  (Docket No. 108-1, ¶ 12).

ask that additional types of information be collected.  (Docket No. 108-1, ¶ 13).

Based on the Deloitte Study, Bayer filed a claim in 1998 for additional QRE credits for the years 1990-1997 and increased tax refunds for 1987, 1988, 1989, 1990 and 1995.  The IRS audited the Deloitte Study and the associated refund claims as part of its audit of Bayer for the 1990-1997 years.  (Docket No. 108-1, ¶ 14, Docket No. 109, ¶ 3).  During the audits for the years 1990-1997, representatives of Bayer and the IRS met often; the IRS asked numerous questions about the additional QRE credits claimed by Bayer; and, to the best of Mr. Wright's knowledge, Bayer answered all of the IRS's questions.[7]  Further, to facilitate the IRS's audit of the Deloitte Study, Bayer made personnel available for interviews and arranged whatever site visits were requested by the IRS.  (Docket No. 108-1, ¶¶ 15(a) and (b), 16).

Included in the information provided to the IRS during the audit were detailed spreadsheets that identified the QREs claimed by Bayer, broken down by the cost center in which the relevant research activities took place.  The IRS never asked Bayer to identify or list the business components to which the claimed QREs related as such.  However, in the course of

---

[7] In his Declaration, Mr. Wright also averred that he is not aware of any information requested by the IRS that Bayer did not provide.  (Docket No. 108-1, ¶ 15(c)).

determining the additional QRE credits to which it claims

entitlement for the years 1990-1997, Bayer and its advisors

provided extensive information and documents to the IRS,

including copies of research, project and product reports and

descriptions of numerous Bayer products, processes, software,

techniques, formulas and inventions, each of which is included

in the definition of a business component set forth in 26 U.S.C.

§ 41(d)(1).   (Docket No. 108-1, ¶ 15(f)).

On every original, timely filed tax return for the years

1987 through 2006 inclusive, Bayer claimed credits for QREs.   On

August 26, 2008, Bayer filed timely written refund claims with

the IRS for the years 1987, 1988, 1989, 1990, 1995 and 2006.[8]

Every refund claim included a detailed explanation of the QRE

credits on which the refund claim was based.   Over a period of

more than 16 years commencing in October 1991, the IRS audited

Bayer's tax returns for every year from 1987 through 2006.

During the course of these audits, the IRS gave particular

scrutiny to the QRE credits claimed and the information provided

by Bayer in support thereof.   Multiple IRS agents, engineers,

managers and advisors worked on the IRS's audits of Bayer's tax

---

[8] Excess (currently unusable) QRE credits may be carried backward or forward by
a taxpayer to offset tax liability for other years.  With respect to the
years between 1987 and 2006 for which Bayer does not seek a tax refund, QREs
were incurred but could not be used because Bayer incurred no tax liability
for those years, and the unusable QRE credits were carried backward or
forward by Bayer to other years.

returns for the years 1987 through 2006.  (Docket No. 108-1,
¶¶ 3-5, 9).

The IRS did not respond to the refund claims filed by Bayer
on August 26, 2008.  As a result, on March 23, 2009, after
waiting more than 6 months as required by Section 6532(a) of the
Internal Revenue Code, Bayer filed this civil action against the
Government for a refund of federal income taxes.  (Docket No.
108-1, ¶ 16, Docket No. 109, ¶ 5).  Bayer alleges that as a
result of the IRS's complete or partial denial of its claims for
QRE credits during the years 1990-2006 inclusive, it overpaid
the federal income taxes due for the years 1987-1990, 1995 and
2006 in an amount exceeding $49 million.[9]

Prior to filing this case, Bayer did not undertake an
analysis to determine whether it could establish a nexus between
the claimed QRE credits and the business components generating
those QREs.[10]  In an interrogatory propounded by the Government
during discovery, Bayer was asked to "[i]dentify and describe
each new or improved business component Bayer contends it

---

[9] As noted in footnote 1, in addition to its position that Bayer is not
entitled to a tax refund for the years 1987-1990, 1995 and 2006, the
Government has asserted a counterclaim against Bayer.  The Government seeks
in excess of $80 million of federal income taxes for the year 2006, together
with accrued interest, which was assessed against Bayer on September 9, 2009.
[10] As noted previously, the Internal Revenue Code provides that the test for
determining whether an expense was incurred in connection with qualified
research is to be applied separately to each business component of the
taxpayer, which includes any product, process, computer software, technique,
formula or invention to be held by a taxpayer for sale, lease or license or
used by the taxpayer in its trade or business.  26 U.S.C. § 41(d)(2)(A).

8

incurred qualified research expenses to develop during the ...

years [1990-2006]."   (Docket No. 31-1).   Bayer responded to the

interrogatory as follows:

> Response. In addition to its general objection, Bayer
> objects on the basis that this Interrogatory is overbroad
> and unduly burdensome without the adoption of a suitable
> sampling method.   During the ... years [1990-2006], Bayer
> estimates that it developed more than 100,000 business
> components, which Bayer's books and records do not, and are
> not required to, track individually.

(Docket No. 31-2).

The Government then filed a motion to compel Bayer to

answer the above—quoted interrogatory, and Bayer filed a motion

for protective order based on statistical sampling ("sampling

motion").   In the sampling motion, Bayer claimed that the use of

statistical sampling to establish the QRE credits to which Bayer

was entitled would "enable the parties to conduct all of the

necessary discovery *and* allow the Court to decide the entire

case in the next two to three years."   (Docket No. 63).   In

support of the sampling motion, Bayer asserted:

> During the years at issue, Bayer's research spending
> exceeded $6 billion at 49 separate sites across the
> country.   The research was performed by tens of thousands
> of individual Bayer employees.   It consisted of millions of
> individual expenditures that were charged to more than 1300
> cost centers.   The vast scope of this enterprise is
> illustrated by the fact that Bayer has already collected
> more than one billion (1,000,000,000) pages of electronic
> records that are potentially relevant to its claims from
> just four of the forty-nine sites at issue and has already
> turned over more than 3 million pages of responsive
> documents to the government.

Given the massive size and scope of the activities and expenditures at issue, it is essential that the parties and the Court be able to focus their analysis on a manageable universe of information.  If the parties were to try to conduct a detailed investigation of every one of the forty-nine sites, for each of the more than twenty years at issue, discovery alone would require decades.  Even if the parties were to depose all of the likely more than ten thousand relevant current and former Bayer employees located all across the country, it would be impossible to introduce more than a tiny fraction of their testimony at trial.  Some form of sampling is absolutely essential to comply with the Court's directive that the parties find a way to streamline this case.

*    *    *

(Docket No. 64, p. 6, Docket No. 109, ¶ 10).

Following a hearing, Bayer's sampling motion was denied and Bayer was directed to fully respond to a similar, but much narrower, interrogatory.  (Docket No. 89).  Thereafter, the Government filed the present motion.

**STANDARD FOR SUMMARY JUDGMENT**

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 332 (1986).[11]  A fact is "material" if proof of its existence or non-existence might

---

[11] Amendments to Fed.R.Civ.P. 56 became effective on December 1, 2010.  The frequently cited standard for summary judgment is now set forth in Rule 56(a), rather than Rule 56(c).  Although the wording of the standard has changed slightly, i.e., the word "issue" was replaced with the word "dispute," the change does not affect the substantive standard or the applicability of prior decisions construing the standard.  Fed.R.Civ.P. 56 Advisory Committee Notes.

affect the outcome of the litigation, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In performing this analysis, the court views the facts in the light most favorable to the non-moving party.  "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party."  Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir.2010), citing, Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir.1997).

## DISCUSSION

With respect to civil actions for tax refunds, such as this one, Section 7422(a) of the Internal Revenue Code provides:

### § 7422. Civil actions for refund

**(a) No suit prior to filing claim for refund.**—- No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a).

In turn, Treasury Regulation § 301.6402-2 provides in relevant part:

**§ 301.6402-2 Claims for credit or refund**.

\* \* \*

**(b) Grounds set forth in claim. (1)** No refund or credit
will be allowed after the expiration of the statutory
period of limitation applicable to the filing of a claim
therefor except upon one or more of the grounds set forth
in a claim filed before the expiration of such period.  The
claim must set forth in detail each ground upon which a
credit or refund is claimed and facts sufficient to apprise
the Commissioner of the exact basis thereof.  The statement
of the grounds and facts must be verified by a written
declaration that it is made under the penalties of perjury.
A claim which does not comply with this paragraph will not
be considered for any purpose as a claim for refund or
credit.

\* \* \*

26 C.F.R. § 301.6402-2(b)(1).

"Courts have long interpreted § 7422(a) and Treasury
Regulation § 301.6402-2(b)(1) as stating a 'substantial
variance' rule which bars a taxpayer from presenting claims in a
tax refund suit that 'substantially vary' the legal theories and
factual bases set forth in the tax refund claim presented to the
IRS." Lockheed Martin Corp. v. United States, 210 F.3d 1366,
1371 (Fed.Cir.2000), citing Cook v. United States, 599 F.2d 400,
406 (Ct.Cl.1979).  The purpose of the substantial variance rule
is to (1) give the IRS notice of the nature of a refund claim
and the specific facts upon which it is predicated; (2) give the
IRS an opportunity to correct errors; and (3) limit any
subsequent litigation to those grounds that the IRS had an
opportunity to consider and is willing to defend.  Id. at 1371,

12

*citing* <u>Ottawa Silica Co. v. United States</u>, 699 F.2d 1124, 1138-
40 (Fed.Cir.1983).

The Government does not, and cannot, argue that Bayer has
varied the legal theory on which its refund claims for the years
1987-1990, 1995 and 2006 are based.  (Docket No. 11, p. 6).
Before the IRS and in this Court, the only legal basis advanced
by Bayer for its refund claims is the credit for QREs set forth
in 26 U.S.C. § 41.  Thus, the sole issue presented by the
Government's motion for partial summary judgment is whether
Bayer is attempting in this litigation to substantially vary the
factual bases for the QRE credits at issue, and the Court
readily concludes that it is not.

In support of its motion for partial summary judgment, the
Government asserts that the reasoning of the Court of Appeals
for the Federal Circuit in <u>Lockheed Martin</u>, <u>supra</u>, a case
involving application of the substantial variance rule to a
taxpayer's claim for QRE credits under 26 U.S.C. § 41, applies
with "equal force" in this case.  (Docket No. 93, p. 8).  After
consideration, the Court agrees with Bayer that the facts
presented to the court in <u>Lockheed Martin</u> are distinguishable
from this case.[12]

---

[12] In fact, the Court agrees with Bayer that all of the cases cited by the
Government in support of its motion for partial summary judgment are
distinguishable from the present case.  (Docket No. 108, pp. 18-20).

13

In Lockheed Martin, the taxpayer, a government contractor,

brought suit against the government claiming entitlement to QRE

credits and seeking a tax refund.  In the Court of Federal

Claims, the taxpayer moved to add QRE credits to its claim that

were not discovered until after the suit was filed, and the

motion was denied.  On appeal, the Court of Appeals for the

Federal Circuit affirmed the lower court's adverse ruling on the

taxpayer's motion to increase its refund claim based on QREs

discovered after disallowance by the IRS and the filing of suit

in the Court of Federal Claims, stating:

                          *   *   *

     The first issue that Lockheed Martin raises in its
appeal is whether the court erred in denying its motion to
order the government to consider additional research
expenses not discovered until trial.  Specifically,
Lockheed Martin argues that the introduction of additional
expenses would not substantially vary its tax refund claims
because the legal basis, the class of contract, and the
categories of expenses underlying the claims remained
unchanged.  Lockheed Martin argues that since its claims
were written broadly and put the government on notice that
it was claiming research credits for wages, supplies, [and]
contract research, ..., it should be able to introduce any
such expenses without varying the claims' factual basis.
Lockheed Martin submits that the court improperly narrowed
its claim to the expenses listed in the Green Books, which
simply constituted evidence for proving its tax claims and
did not constitute claims.

     The government responds that the court correctly
rejected Lockheed Martin's introduction of additional
expenses because those expenses would substantially vary
the factual basis for its tax claims.  The government
argues that even though Lockheed Martin wrote its refund
claims broadly, there is no dispute that it predicated its
refund claims on specific expenses which together formed

                              14

the factual basis for the claims.  The government contends
that, by definition, later-discovered expenses cannot
constitute the factual predicate for an earlier tax claim.
Thus, the government reasons, Lockheed Martin cannot
introduce additional expenses without varying the factual
basis for the claims.  The government also points out that
when Lockheed Martin submitted the Green Books to the
government for auditing, it represented to the government
that, with respect to thirteen of the contracts, the books
contained all of the expenses upon which its research
credit claims were predicated.  Thus, the government
argues, the expenses listed in the Green Books constitute
the factual basis underlying Lockheed Martin's refund
claims for those contracts and Lockheed Martin cannot now
add expenses without varying that basis.

                    *    *    *

     We agree with the government that the court correctly
rejected Lockheed Martin's attempt to introduce research
expenses that it did not discover until after it filed suit
in the Court of Federal Claims....  Had Lockheed Martin
complied with [Treasury Regulation § 301.6402-2(b)(1)] and
submitted a detailed listing of particular expenses to the
I.R.S. with its tax refund claim, the exact factual basis
of its tax refund claim would have been provided and there
would no dispute that Lockheed Martin could not vary from
that list of expenses.  See Armstrong Rubber Co. v. United
States, 207 Ct.Cl. 1023 (1975)(holding that substantial
variance rule prohibited taxpayer from adding assets to the
list that formed the basis for its refund claim because the
claim was never amended to include those assets).

     We agree with the government that the introduction of
additional expenses would constitute a substantial variance
of the factual basis for Lockheed Martin's claims.
Lockheed Martin's claims were written broadly, but there
can be no dispute that each of its tax refund claims was
based on a finite group of expenses.  Lockheed Martin
predicated its claims on particular research expenses that
it believed entitled it to a tax credit.  To arrive at a
research credit total for each year, Lockheed Martin summed
those expenses.  Even though the details of the expenses
were not provided to the IRS, they constituted the factual
basis for its claim.  There is no dispute that the expenses
that Lockheed Martin attempted to introduce were not
discovered until after it filed suit in the Court of

Federal Claims, several years after the claims were filed
with the IRS.  They were not among the expenses upon which
Lockheed Martin predicated its claim.  The substantial
variance rule prohibits Lockheed Martin from now
introducing those expenses.  The court therefore did not
err by denying Lockheed Martin's request that the court
consider expenses discovered after the refund claims were
filed.

                              *    *    *

210 F.3d at 1370-72.

        Unlike the taxpayer in Lockheed Martin, Bayer is not

attempting in this suit to increase the claim for QRE credits

for the years 1990-2006 presented to the IRS during the lengthy

audits of the Deloitte Study and Bayer's refund claims for the

years 1987-1990, 1995 and 2006.  Rather, Bayer has been

compelled to engage in Herculean efforts to comply with the

Government's demand in this litigation for a list of the

business components to which the claimed QRE credits relate.

There is no dispute that the Internal Revenue Code provides that

the test for determining whether an expense was incurred in

connection with qualified research is to be applied separately

to each business component of the taxpayer.  26 U.S.C.

§ 41(d)(2)(A).  However, the Government will not be permitted to

demand a list of business components for the first time in this

Court and then object based on the substantial variance rule to

Bayer's need to gather significant, additional evidence to

comply with the demand when the QRE credits underlying Bayer's refund claim have not changed.[13]

The Court agrees with Bayer that the Government "confuses the requirement that a taxpayer disclose the *grounds* of its refund claims to the IRS with the mistaken notion that a taxpayer must disclose all of the *evidence* or subsidiary components supporting those grounds." (Docket No. 108, p. 2). See Bethlehem Banking Co. v. United States, 129 F.2d 490, 493 (3d Cir.1942)(In taxpayer's action for recovery of taxes paid under unconstitutional provisions of Agricultural Adjustment Act, the taxpayer was not limited to evidence submitted to Commissioner in connection with claim for refund, and could present further evidence in support of the claim); First Nat'l Bank of Fayetteville, Arkansas v. United States, 727 F.2d 741, 744 (8th Cir.1984)(Where the claim for refund states general grounds for relief, an item raised in litigation will be permitted if the taxpayer adequately alerted the IRS to the fact that the item is a ground for recovery); Ottawa Silica Co. v. United States, 699 F.2d 1124, 1139 (Fed.Cir.1983)("This case

---

[13] Interestingly, although Lockheed Martin involved a taxpayer's claim for QRE credits under 26 U.S.C. § 41, neither the lower court opinion nor the opinion of the Federal Circuit mention the term "business component." In fact, the lower court noted that during the course of the IRS's examination, the taxpayer supported its refund claims with computer-generated schedules of specific expenditures incurred in connection with the 13 largest contracts subject to the refund claims. 39 Fed.Cl. 197, 200 (1997). Thus, it appears the Government does not demand strict compliance with 26 U.S.C. § 41(d)(2)(A) in every case involving a claim for QRE credits.

does not present a situation in which the issue raised at the
trial stage is derived from or is integral to the ground timely
raised in the refund claim and thus may be considered as part of
the initial ground."); Burlington Northern Inc. v. United
States, 684 F.2d 866, 869 (Ct.Cl.1982)(In action for alleged
overpayment of federal income taxes, taxpayer's use of past
retirement data by means of the actuarial method was not
precluded by variance doctrine; such data was simply evidence
probative of the factual basis clearly asserted in disallowed
refund claim); Scovill Mfg. Co. v. Fitzpatrick, 215 F.2d 567,
569 (2d Cir.1954)(A taxpayer may not raise a wholly new factual
basis for a refund claim at the later trial); Rogan v. Ferry,
154 F.2d 974, 977 (9th Cir. 1946)(Where claim for refund of
estate taxes stated that (a) deceased wife was owner of one-half
of trust because creation of trust effected a property
settlement between wife and her husband, (b) only one-half of
the value of assets involved should have been included in
deceased's gross estate, and (c) community interest of wife
should not have been included in valuation of insurance policies
in fixing deficiency assessment, and on trial of action to
recover taxes paid, evidence was offered that wife and husband
prior to marriage had entered into oral contract that all
earnings and all property then or thereafter acquired would be
owned equally and jointly by them, no variance existed between

18

claim and judgment rendered against government); First Nat'l
Bank of Fort Smith v. United States, 610 F.Supp. 933, 937-38
(W.D.Ark.1985)(Where claim for tax refund seeks relief on
general grounds, item arising in litigation will be permitted,
even though not specifically mentioned in claim, if taxpayer has
sufficiently alerted IRS to fact that item is ground for
relief).

        As noted by Bayer, the factual bases for the claimed QRE
credits are its research activities; the expenses incurred in
connection with its research activities are organized by cost
centers (which is not prohibited by any section of the Internal
Revenue); the IRS was provided with detailed spreadsheets
identifying the claimed QRE credits which were organized by the
cost center in which the relevant research activity took place;
and the IRS was provided with substantial evidence concerning
Bayer's products, processes, software, techniques, formulas and
inventions which are included in the definition of a business
component in 26 U.S.C. § 41(d).  Simply put, the Government's
claim that Bayer did not provide adequate notice of the factual
bases for the QRE credits at issue is baseless.  Under the
circumstances, the Government's motion for judgment as a matter

of law on Bayer's refund claim will be denied.[14]

_William L. Standish_
William L. Standish
United States District Judge

Date: September 20, 2012

---

[14] In light of the Court's conclusion that Bayer's refund claim is not barred by the substantial variance rule, it is not necessary to address the additional arguments raised by Bayer in opposition to the Government's partial summary judgment motion.